UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELTA AIR LINES, INC.,

    Plaintiff,

v.                                                Case No.  8:14-cv-948-T-24 TGW

NETWORK CONSULTING
ASSOCIATES, INC., ET AL.,

    Defendants.
_____/

## ORDER

This cause comes before the Court on Defendants Millennium Travel and Promotions, Inc., Vacation Tours, USA, Inc., and Henry J. Armand's Motion to Dismiss.  (Doc. No. 70). Plaintiff opposes the motion.  (Doc. No. 77).  As explained below, the motion is granted in part and denied in part.

**I.  Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

at 1965 (citation omitted).  While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level."  Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

**II.  Background**

Plaintiff Delta Air Lines, Inc. alleges the following in its amended complaint (Doc. No. 46): Plaintiff is the owner of the Delta trademark, and Plaintiff has never authorized Defendants to use it.  Plaintiff contends that Defendants have engaged in a fraudulent scheme to sell travel club memberships, which includes sending marketing materials (such as "the Fly Letter") that improperly use Plaintiff's Delta trademark in the letterhead.[1]  Specifically, Plaintiff contends that Defendants mail out the Fly Letter, which falsely appears to have been sent on behalf of Plaintiff.  The Fly Letter fraudulently informs the recipient that they have "qualified for an award of two (2) round-trip airline tickets" that "are valid for travel anywhere within the Continental United States."  (Doc. No. 46-1).  The Fly Letter directs the recipient to call a toll-free number to claim the award.  When the recipient calls the number, the person answering the phone (referred to as a "scheduler") asks the caller a series of income and lifestyle-related questions to determine

---

[1]The Fly Letter is just one example of the bogus marketing materials sent by Defendants that improperly use Plaintiff's Delta trademark.  In its motion for a preliminary injunction, Plaintiff provides much more information regarding Defendants' fraudulent scheme and the infringing letters that were sent.  (Doc. No. 58).

whether the caller qualifies as a potential travel club membership purchaser.

If the scheduler determines that the caller is not likely to be a travel club membership purchaser, the scheduler informs the caller that they are not eligible to receive the two free airline tickets that were promised in the Fly Letter. If the scheduler determines that the caller is likely to be a travel club membership purchaser, the scheduler tells the caller that in order to claim the two free airline tickets, the caller must attend a nearby travel-related sales meeting. The callers are not told that the sales meeting that they will be attending is, in fact, a high-pressure sales presentation conducted for the purpose of selling worthless travel club memberships.

If a caller actually purchases a travel club membership, the caller is directed to a travel fulfillment company. When the caller attempts to book travel through the travel club membership, he or she typically learns that the membership offers no meaningful discount and is, in fact, worthless.

If a caller that attended the sales presentation insists upon receiving the two promised free airline tickets, the caller is given a voucher that includes contact information for a purported award fulfillment company. When the caller calls the award fulfillment company, the caller learns that he or she must pay expenses, taxes, and fees that often exceed the total value of the "free" airline tickets. If the caller pays the expenses, taxes, and fees, he or she ultimately finds out that the tickets contain broad limitations and restrictions that render the tickets essentially worthless.

Alternatively, sometimes the award fulfillment company engages in a bait and switch, and the award fulfillment company attempts to convince the caller to accept travel on a cruise

ship instead of the airline tickets. However, in this situation, the caller is asked to pay a non-existent "port tax" fee.

Thus, in reality, Defendants use the Fly Letter to lure recipients into a high-pressure sales presentation for travel club memberships that are, in most instances, worthless. As explained above, this fraudulent scheme is made up of five categories of participants: First, the travel fulfillment company is selling the travel club memberships. Second, the "mailers" send out the bogus marketing materials that improperly use Plaintiff's Delta trademark. Third, the schedulers receive phone calls from people who believe that they have won two free airline tickets, and the schedulers determine which callers qualify to attend the sales presentations. Fourth, the "distributors" hold the sales presentations where they attempt to sell the travel club memberships for the travel fulfillment company. Fifth, the award fulfillment company is contacted by the people attempting to obtain their two free airline tickets.

Plaintiff contends that Defendants have the following roles in this scheme: Defendant Network Consulting Associates, Inc. ("NCA") is a mailer, and it specializes in the printing and mailing of direct mail advertisements. Defendants John Anderson, John Elmer, and Jody Ritter are owners, officers, and/or managers of NCA, and they personally participated in, directed, and ratified the infringing acts of NCA.

Defendants Millennium Travel and Promotions, Inc. ("MTP"), Vacation Tours USA, Inc. ("VTU"), and their principal, Henry J. Armand, are distributors (and/or are marketers for other distributors). MTP and VTU acted through Armand, who personally participated in, directed, and ratified the infringing acts of MTP and VTU. MTP and VTU hired NCA to carry out the infringing marketing campaign.

Based on the above, Plaintiff contends that Defendants make it appear that Plaintiff has endorsed or is otherwise involved with Defendants in their travel club scheme. Plaintiff contends that Defendants' wrongful acts and representations harm Plaintiff and its business reputation. Furthermore, Plaintiff contends that Defendants' wrongful acts and representations are likely to cause confusion and mistake by the public, such that the public is deceived into believing that Plaintiff is associated with Defendants' fraudulent scheme.

As a result, Plaintiff asserts nine claims in its amended complaint against all Defendants: (1) federal trademark infringement, (2) unfair competition under federal law, (3) dilution of a famous mark by blurring under the Lanham Act, (4) dilution of a famous mark by tarnishment under the Lanham Act, (5) contributory trademark infringement, (6) federal RICO violations, (7) violation of Florida's Deceptive and Unfair Trade Practices Act, (8) unjust enrichment, and (9) punitive damages. In response, MTP, VTU, and Armand (collectively, the "Millennium Defendants") filed the instant motion to dismiss.

## III.  Motion to Dismiss

The Millennium Defendants move to dismiss all nine claims. Accordingly, the Court will analyze each claim.

### A.  Trademark Infringement

In Count I, Plaintiff asserts a trademark infringement claim. In order to succeed on a claim for trademark infringement:

> [T]he plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion. . . . Determination of likelihood of confusion requires analysis of the following seven factors: (1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising

5

>   media used, (6) defendant's intent and (7) actual confusion. Of these factors, the type of mark and the evidence of actual confusion are the most important in this circuit.

Dieter v. B&H Industries of Southwest Florida, Inc., 880 F.2d 322, 326 (11the Cir. 1989)(internal citations omitted). "[T]he touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion." Custom Manufacturing & Engineering, Inc. v. Midway Services, Inc., 508 F.3d 641, 647 (11th Cir. 2007)(citations omitted). Plaintiff contends that Defendants' use of its Delta trademark in the letterhead portion of the Fly Letter constitutes trademark infringement, because such use will likely cause customer confusion by falsely suggesting affiliation, sponsorship, or endorsement of the Fly Letter by Plaintiff.

The Millennium Defendants move to dismiss this claim, arguing that they did not infringe on Plaintiff's trademark, because their conduct falls within the nominative use exception. As explained by one court:

>   [O]ne can use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product. This right to use a mark to identify the markholder's products—a nominative use—however, is limited in that the use cannot be one that creates a likelihood of confusion as to source, sponsorship, affiliation, or approval. . . . [W]here a nominative use of a mark occurs without any implication of affiliation, sponsorship, or endorsement—i.e., a likelihood of confusion—the use "lies outside the strictures of trademark law." In order to avail itself of the shield of nominative use, the defendant (1) may only use so much of the mark as necessary to identify the product or service and (2) may not do anything that suggests affiliation, sponsorship, or endorsement by the markholder.

Pebble Beach Co. v. Tour 18 I Limited, 155 F.3d 526, 545-46 (5th Cir. 1998)(internal citations omitted), *abrogated on other grounds by*, TrafFix Devices, Inc. v. Marketing Displays, Inc., 532

U.S. 23, 32-33 (2001); see also Ford Motor Co. v. O.E. Wheel Distributors, LLC, 868 F. Supp.2d 1350, 1368 (M.D. Fla. 2012). The Millennium Defendants argue that they used the Delta mark in the Fly Letter to properly identify the potential airlines upon which a recipient might obtain the free tickets.

The Court rejects the Millennium Defendants' argument that dismissal is appropriate, because the use of Plaintiff's mark in the letterhead portion of the Fly Letter arguably suggests affiliation, sponsorship, or endorsement of the Fly Letter by Plaintiff. Accordingly, the Court denies the Millennium Defendants' motion as to this claim.

### B.  Unfair Competition under the Lanham Act

In Count II, Plaintiff asserts a federal unfair competition claim under the Lanham Act, in violation of 15 U.S.C. § 1125(a). This provision of the Lanham Act provides the following:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A)  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B)  in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities
> shall be liable in a civil action by any person who believes that she or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). As such, in order "[t]o establish a prima facie case under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name,

7

and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." Midway Services, 508 F.3d at 647 (quotation marks and citations omitted).

The Millennium Defendants move to dismiss this claim based on the same argument made with respect to the trademark infringement claim—that they did not infringe on Plaintiff's trademark, because their conduct falls within the nominative use exception for trademark infringement. Again, this Court rejects the argument and concludes that this claim is not subject to dismissal.

### C. Dilution by Blurring

In Count III, Plaintiff asserts a claim for dilution of a famous mark by blurring under the Lanham Act, in violation of 15 U.S.C. § 1125(c). Section 1125(c)(1) provides protection to an "owner of a famous mark that is distinctive, inherently or through acquired distinctiveness."[2] Specifically, this section prohibits any "person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause

---

[2]Pursuant tp § 1125(c)(2)(A):
> [A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
> (I) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). Section 1125(c) describes dilution by blurring as follows:

> "[D]ilution by blurring" is [an] association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:
> (I) The degree of similarity between the mark or trade name and the famous mark.
> (ii) The degree of inherent or acquired distinctiveness of the famous mark.
> (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.
> (iv) The degree of recognition of the famous mark.
> (v) Whether the user of the mark or trade name intended to create an association with the famous mark.
> (vi) Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B).

"To prevail on a federal dilution claim, the plaintiff must demonstrate that: (1) the plaintiff's mark is famous; (2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; (3) the defendant's use was commercial and in commerce; and (4) the defendant's use of the plaintiff's mark has likely caused dilution." Rain Bird Corp. v. Taylor, 665 F. Supp.2d 1258, 1266-67 (N.D. Fla. 2009). Furthermore, "[a] plaintiff's showing that a defendant used identical trademarks may constitute circumstantial evidence sufficient to support a finding of dilution." Bentley Motors Limited Corp. v. McEntegart, 976 F. Supp.2d 1297, 1314 (M.D. Fla. 2013).

The Millennium Defendants move for dismissal of this claim, arguing that there can be no dilution by blurring, because "[b]lurring involves a diminution in the uniqueness or

individuality of a mark because of its use on unrelated goods." Scott Fetzer Co. v. House of Vacuums Inc., 381 F.3d 477, 489 (5th Cir. 2004). The Millennium Defendants argue that they did not use Plaintiff's mark on *unrelated* goods; instead, they used Plaintiff's mark in connection with Plaintiff's airline services—to properly identify Plaintiff's airline as one on which a recipient might obtain free tickets.

The Court rejects the Millennium Defendants' argument because they are narrowly limiting how dilution occurs. Defendants used Plaintiff's mark in the letterhead of the Fly Letter, and by doing so, they have arguably suggested that Plaintiff (and its mark) is associated with the free ticket promotion described therein. Stated differently, a jury could conclude that Defendants did not use Plaintiff's mark simply to identify that the recipient could receive free tickets on Plaintiff's airline; instead, a jury could find that Defendants used Plaintiff's mark to induce recipients into believing that Plaintiff was one of the entities involved in sending the Fly Letter and involved in the creation of the free ticket offer. As such, the Court denies the Millennium Defendants' motion as to this claim.

### D. Dilution by Tarnishment

In Count IV, Plaintiff asserts a claim for dilution of famous mark by tarnishment under the Lanham Act. Dilution by tarnishment differs from dilution by blurring in that "'dilution by tarnishment' is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). "Tarnishing occurs when a trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." Scott

Fetzer, 381 F.3d at 489 (internal quotation marks and citations omitted).

The Millennium Defendants move for dismissal of this claim, arguing that there can be no dilution by tarnishment because the recipients are eligible to receive tickets on Plaintiff's airline. As such, the Millennium Defendants argue that there can be no tarnishment because nothing is offered of shoddy quality, nor is anything portrayed in an unwholesome or unsavory context.

The Court rejects the Millennium Defendants' argument that dismissal is warranted. Plaintiffs have alleged that the Fly Letter is part of a fraudulent and deceptive scheme, and even in the cases where the recipient receives the promised free airline tickets, those tickets are essentially worthless. Therefore, the inclusion of Plaintiff's mark on the letterhead of the Fly Letter arguably suggests an association between Plaintiff, the fraudulent scheme, and the worthless tickets. Therefore, the Court denies the Millennium Defendants' motion as to this claim.

### E. Contributory Infringement

In Count V, Plaintiff asserts a claim for contributory trademark infringement. This type of claim has been described as follows:

> It is well-established that liability for trademark infringement can extend beyond those entities that actually perform the acts of infringement. To be liable for contributory trademark infringement, a defendant must have intentionally induced another to infringe a trademark. Any liability for contributory infringement will necessarily depend upon whether or not the contributing party intended to participate in the infringement or actually knew about the infringing activities.

ITT Corp. v. Xylem Group, LLC, 963 F. Supp.2d 1309, 1324 (N.D. Ga. 2013).

The Millennium Defendants move for dismissal of this claim, arguing that Plaintiff has

Case 8:14-cv-00948-SCB-TGW   Document 80   Filed 09/02/14   Page 12 of 19 PageID 2508

Case 8:14-cv-00948-SCB-TGW   Document 80   Filed 09/02/14   Page 12 of 19 PageID 2508

not identified which defendants performed the infringement and which defendants intentionally induced the infringement. The Court rejects this argument, as Plaintiff has clearly alleged that: (1) MTP and VTU acted through Armand, who personally participated in, directed, and ratified the infringing acts of MTP and VTU; and (2) MTP and VTU hired NCA to carry out the infringing marketing campaign. Thus, Plaintiff has sufficiently alleged that MTP, VTU, and Armand (the defendants that filed the instant motion) intentionally induced the infringement that allegedly occurred in this case. Accordingly, the Court denies the Millennium Defendants' motion to dismiss this claim.

## F.  RICO

In Count VI, Plaintiff asserts a claim for federal RICO violations. Pursuant to 18 U.S.C. § 1962(c), it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Therefore, in order to state a RICO claim under § 1962(c), a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. See Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282 (11th Cir. 2006).

In Williams, the court described the first two elements in the following manner:

> With regard to elements (1) and (2) of the four-part test under § 1962(c), the plaintiff[] must establish "conduct of an enterprise" and that the enterprise had a common goal. Furthermore, [the defendants] "must participate in the operation or management of the enterprise itself.
>
> An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." . . . "[T]he existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various

> associates function as a continuing unit." Furthermore, "the definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." . . . This Court has never required anything other than a "loose or informal" association of distinct entities.
>
> As for the common purpose, [it is sufficient if] . . . [t]he acts of racketeering activity committed by [the defendants] have the same or similar objective . . . .[T]he common purpose of making money [is] sufficient under RICO. . . . Furthermore, [the defendants] "must participate in the operation or management of the enterprise itself." That is, [the defendants] "must have some part in directing" the affairs of the enterprise.

Id. at 1283-85 (internal citations omitted). With regard to the third and fourth elements, the Williams court explained:

> A pattern of racketeering activity, for purposes of the RICO Act, requires at least two acts of racketeering activity. An act of racketeering is commonly referred to as a predicate act. A pattern of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts.

Id. at 1283 (quotation marks and citations omitted).

"'Racketeering activity' is defined to include such predicate acts as mail and wire fraud." American Dental Assoc. v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010). In order to state a claim for mail or wire fraud, a plaintiff must allege that a person or entity "(1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." Id. (quotation marks and citation omitted).

Furthermore, when a plaintiff's RICO "claim is based on an alleged pattern of racketeering consisting entirely of mail and wire fraud, [the plaintiff's] substantive RICO allegations must comply . . . with [Federal Rule of Civil Procedure] 9(b)'s heightened pleading

13

standard." American Dental, 605 F.3d at 1291.  In doing so:

> [The] plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements . . . [were misleading]; and (4) what the defendants gained by the alleged fraud."  The plaintiff must allege facts with respect to each defendant's participation in the fraud.

Id.

The Millennium Defendants contend that Plaintiff has not sufficiently pled its RICO claim.  The Court disagrees.  Plaintiff contends that Defendants were all involved in a fraudulent scheme to sell worthless travel club memberships.  Additionally, Plaintiff alleges that the scheme involved mail fraud (via the Fly Letter) and wire fraud (via recipients of the Fly Letter calling Defendants to claim their free tickets and/or to purchase the worthless travel club membership), which constitutes a pattern of racketeering activity by an enterprise engaged in and affecting interstate commerce.  Finally, Plaintiffs allege that the Millennium Defendants participated in the operation or management of the enterprise via allegations that:  (1) MTP and VTU acted through Armand; and (2) MTP and VTU hired NCA to carry out the fraudulent marketing campaign.

The Millennium Defendants also argue that Plaintiff has not alleged sufficient proximate cause to support a claim of injury, nor has Plaintiff alleged a direct, cognizable injury.  The Court rejects these arguments.  Plaintiff has alleged that the Fly Letter was fraudulent because it contained Plaintiff's Delta trademark in its letterhead, which suggested that Plaintiff was involved in the sending of the Fly Letter.  Defendants' use of Plaintiff's trademark in the letterhead was unauthorized and caused consumer confusion.  Furthermore, recipients of the Fly Letter that called to claim their free airline tickets learned that the tickets were essentially worthless.  Thus, the Fly Letter, which led to the telephone calls, resulted in consumer confusion

regarding Plaintiff's association with the fraudulent scheme and resulted in damage to Plaintiff's goodwill. Accordingly, the Court denies the Millennium Defendants' motion to dismiss this claim.[3]

### G. Florida's Deceptive and Unfair Trade Practices Act

In Count VII, Plaintiff asserts a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").[4] FDUTPA prohibits "[u]nfair methods of competition . . . and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Plaintiff alleges that Defendants have violated FDUTPA by using Plaintiff's Delta trademark as part of their fraudulent scheme to sell worthless travel club memberships, which has caused damage to Plaintiff's goodwill symbolized by the Delta trademark.

Pursuant to Florida Statute § 501.211(2), a person who has suffered a loss due to a violation of FDUTPA may recover actual damages. Therefore, in order to state a FDUTPA claim for damages, a plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2007)(citations omitted). When asserting a FDUTPA claim, a plaintiff may not pursue a claim for damage to property other than the property that is the subject of the consumer transaction.[5]

---

[3]The Court also denies the Millennium Defendants' request that the Court require Plaintiff to file a civil RICO Case Statement.

[4]This claim is titled in the amended complaint as "Unfair Competition and Deceptive Trade Practices (State)," and the claim refers to Florida Statute § 501.204, *et seq*. As such, it appears to the Court that this is a claim under FDUTPA. However, if Plaintiff is attempting to assert a claim other than a FDUTPA claim in Count VII, the Court will give Plaintiff leave to amend in order to more clearly assert such a claim.

[5]In this case, the property that was damaged was Plaintiff's trademark, which was a part of the sale of the travel club memberships. See Klinger v. Weekly World News, Inc., 747 F.

15

Fla. Stat. § 501.212(3).

The Millennium Defendants move to dismiss this claim, arguing that Plaintiff has not stated a claim for recoverable damages. Specifically, the Millennium Defendants argue that damages under FDUTPA must be calculated the following way:

> [T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. [ ... ] A notable exception to the rule may exist when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages.

Id. (quotation marks and citations omitted).

The Court rejects the Millennium Defendants' argument. The Court agrees that the above damages description is the appropriate calculation of damages when a purchaser of a product is deceived about the product by the seller. However, the instant case involves a trademark owner's claim against the unauthorized use of its trademark and the damages to the goodwill associated with the trademark that resulted from the unauthorized use. In such a scenario, the damages calculation described above would not properly measure the damages caused by the deceptive/unfair practice. See, e.g., Marco Island Cable v. Comcast Cablevision of the South, Inc., 312 Fed. Appx. 211, 214 (11th Cir. 2009)(awarding damages based, in part, on the plaintiff's expert's opinion of the diminished value of its business that resulted from the defendant's conduct). Accordingly, the Court denies the Millennium Defendants' motion to

---

Supp. 1477, 1480-81 (S.D. Fla. 1990)(stating that the property that was damaged in the case was the plaintiff's trademark).

dismiss this claim.[6]

### H. Unjust Enrichment

In Count VIII, Plaintiff asserts an unjust enrichment claim under Florida law based on Defendants' unauthorized use of Plaintiff's trademark. The Millennium Defendants move for dismissal of this claim, arguing that there was no understanding, either express or implied, between Plaintiff and the Millennium Defendants such that an unjust enrichment claim could be asserted. Plaintiff responds that courts have allowed recoveries for trademark infringement under an unjust enrichment theory. Both parties' arguments have a basis in the law.

The Court agrees with the Millennium Defendants that an unjust enrichment claim under Florida law should be dismissed. This is because there is a difference between unjust enrichment, which refers to mistaken transfers, and wrongful enrichment, which refers to wrongful takings. See Guyana Telephone & Telegraph Co. v. Melbourne International Communications, Ltd., 329 F.3d 1241, 1245 n.3 (11th Cir. 2003). As the court in Guyana Telephone explained:

> [The underlying plaintiff] asserts that its right to restitution arises from an unjust enrichment. This is not quite accurate. The fact that it would be "unjust" (as in "unfair") for a defendant to retain a benefit obtained through the commission of wrong does not mean that the basis of the restitutionary obligation arises from an unjust enrichment. . . . The paradigm examples of unjust enrichment are mistaken transfers. "As soon as [a] claimant relies on a wrong [to supply the unjust factor], the right on which he relies arises from that wrong, not from unjust enrichment." Here, because [the plaintiff's] right to restitution arises from the wrong of the tort committed by the conspiracy [via misrepresentations that caused the plaintiff not to be

---

[6]To the extent that the Millennium Defendants also request that the Court require Plaintiff to post a bond in connection with this claim, pursuant to Florida Statute § 501.211(3), the Court denies the request.

17

> paid fees that it was entitled to receive], this is a case of wrongful enrichment rather than unjust enrichment: the breach of a primary tort duty gave rise to a secondary right to restitution for the benefit obtained through commission of the wrong.

Id. (internal citations omitted).

In this case, Plaintiff's unjust enrichment claim is based on Defendants' unauthorized use of Plaintiff's trademark. However, courts that have applied the theory of unjust enrichment in connection with trademark infringement claims have done so in determining the plaintiff's recovery under the Lanham Act via an award of the infringer's profits. See Monsanto Co. v. Campuzano, 206 F. Supp.2d 1252, 1267 (S.D. Fla. 2002)(stating that an accounting of an infringer's "profits furthers the congressional purpose by making infringement unprofitable, and because it deprives the defendant of unjust enrichment and provides a deterrent to similar activity in the future, it is justified"); Nutrivida, Inc. v. Inmuno Vital, Inc., 46 F. Supp.2d 1310, 1315 (S.D. Fla. 1998)(stating that an award of an infringer's profits under the Lanham Act has been recognized as compensation for the defendant's unjust enrichment); Babbit Electronics, Inc. v. Dynascan Corp., 38 F.3d 1161, 1182 (11th Cir. 1994)(awarding profits under the Lanham Act and stating that "an accounting of profits is proper under a theory of unjust enrichment"). Therefore, the Court dismisses Plaintiff's unjust enrichment claim under Florida law, and instead, Plaintiff may pursue damages under the Lanham Act in the form of Defendants' profits under a theory of unjust enrichment.

### I. Punitive Damages

In Count IX, Plaintiff asserts a claim for punitive damages, pursuant to Florida Statute § 768.72(2). Section 768.72(2) provides that "[a] defendant may be held liable for punitive

damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence."

The Millennium Defendants move to dismiss Count IX, because it is not an independent claim for relief. Instead, punitive damages are a potential remedy that is related to the other claims asserted in the amended complaint. See Kaplan v. Zicker & Associates, P.A., 2013 WL 6002216, at *4 (S.D. Fla. Nov. 12, 2013). The Court agrees with the Millennium Defendants that Count IX should be dismissed; however, the Court will grant Plaintiff leave to amend to add a request for punitive damages within the appropriate claims that remain.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendants Millennium Travel and Promotions, Inc., Vacation Tours, USA, Inc., and Henry J. Armand's Motion to Dismiss (Doc. No. 70) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** as to Count VIII (unjust enrichment under Florida law) and Count IX (punitive damages); otherwise, the motion is **DENIED**.

(2) If Plaintiff wishes to pursue punitive damages, it must file a second amended complaint by September 9, 2014. Also, if Plaintiff is attempting to assert a claim other than a FDUTPA claim in Count VII, it must more clearly assert such a claim in the second amended complaint.

**DONE AND ORDERED** at Tampa, Florida, this 2nd day of September, 2014.

Susan C. Bucklew
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record